STATE OF CONNECTICUT *v.* JEFFREY SKELLY
(AC 30936)

Bishop, Robinson and Schaller, Js.

Argued May 25—officially released September 28, 2010

*Richard E. Condon, Jr.,* assistant public defender, for the appellant (defendant).

*Brian F. Valko,* certified legal intern, with whom were *Michele C. Lukban,* senior assistant state's attorney, and, on the brief, *Gail P. Hardy,* state's attorney, and *Christopher A. Parakilas,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Jeffrey Skelly, appeals from the judgment of conviction, rendered after a court trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1). On appeal, the defendant claims that the trial court improperly found that he was the initial aggressor, thereby negating his claim of self-defense pursuant to General Statutes § 53a-19. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history, which support the court's finding that the state proved beyond a reasonable doubt all of the essential elements of assault in the third degree. The defendant, having been previously convicted of manslaughter, was

incarcerated at the Carl Robinson Correctional Institution (Carl Robinson) on the night in question. Sometime after 11 p.m. on January 5, 2008, Lieutenant Jason Beaulieu heard a code blue, which indicates a fight between inmates, announced over his radio. When he arrived on the scene, he found the victim, Joel German, holding a T-shirt over his ear while being restrained by responding officers. Beaulieu instructed the officers to place the victim in handcuffs, but when the victim removed the T-shirt from his ear, Beaulieu observed severe bleeding and that a portion of the victim's ear was barely attached to the rest of the ear. Beaulieu then ordered that the victim be taken to the medical unit, and the victim subsequently was referred to the emergency room at John Dempsey Hospital where he received twelve stitches to repair the ear.

The following day, state police Trooper Chick Bistany took the statements of the defendant and the victim. Both men reported that the incident took place at approximately 11:20 p.m. in the day room of building 4-A at Carl Robinson. The defendant was sitting at a table when the victim entered the day room with another inmate and sat down at the same table with the defendant. The defendant claims that the victim shook the table and that when the defendant asked the victim to stop, the victim pushed the defendant's books toward him, told him to get off the table and then punched him in the face, causing the defendant to suffer a bloody nose. The defendant claims that he defended himself by putting a pen against the victim's eye preparing to stab the victim's eye. After composing himself, however, he decided not to shove the pen into the victim's eye but to bite the victim's ear as he body-slammed the victim to the floor before correction officers broke up the fight.

The victim's statement to Bistany differed from the defendant's statement in several significant respects.

The victim stated that after sitting down at the table, he reached down to scratch his foot and upon sitting up the defendant accused him of trying to read what the defendant was writing. The victim then told the defendant that the defendant's work was none of his business, slid the notebooks toward the defendant to emphasize that he was not reading the defendant's materials and raised his hands to indicate it was not any of his business. The defendant then punched him in the face, lunged at him and bit his ear. The victim then attempted to defend himself and punched the defendant somewhere in the upper body before correction officers arrived and broke up the fight.

The trial before the court commenced on March 3, 2009. Both the defendant and the victim testified as to the disputed facts. Additionally, the state presented the testimony of Bistany, Beaulieu and the physician who ordered the victim's transfer to the hospital, Edward Blanchette. The state also put into evidence a video recording of the incident. After viewing the recording, Bistany opined that the fight took place in two phases. According to Bistany, the first phase of the fight occurred when the defendant stood up, then the victim stood up to face the defendant and attempted to strike the defendant. After the victim sat down, the second phase of the fight occurred when the defendant lunged at the victim and bit his ear.

Following the state's presentation of evidence, the defendant orally moved for a directed verdict, arguing that the state had failed to present evidence of his intent to disfigure the victim. The court denied the motion. The defendant testified that he was defending himself from the victim's attack because he feared for his life. Subsequent to the defendant's presentation of evidence and the parties' closing arguments, the court found the

defendant guilty of assault in the third degree.[1] The court sentenced the defendant to one year incarceration to run consecutively to the sentence he was serving at the time.

On August 28, 2009, the defendant filed a motion for articulation, requesting that the court articulate what factual and legal findings it made relative to the defendant's claim of self-defense. The state did not object to the defendant's motion for articulation. Rather, in the state's September 8, 2009 response it stated that "[a]n articulation in this case of whether the court accepted all of the [s]tate's arguments or, if some, which and the factual findings supporting them, such as whether there was a pause between the first fight where the victim was the initial aggressor and the second fight where the defendant was the aggressor would be helpful to addressing any of the claims that the defendant might raise on appeal regarding his defense of self-defense."

On September 11, 2009, the court granted the defendant's motion and articulated: "The court found that the defendant was the initial aggressor. The defendant and the victim appeared to be engaged in, at most, a verbal dispute until the defendant rose from his chair and physically confronted the victim. The court did not credit the defendant's claim that the victim initially punched the defendant, bloodying his nose." This appeal followed.

The defendant claims that the court improperly found that he was the initial aggressor, thereby negating his claim of self-defense pursuant to § 53a-19.[2] Specifically,

___

[1] The court found the defendant not guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (2).

[2] General Statutes § 53a-19 provides in relevant part: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using

he argues that the cumulative force of the evidence was not sufficient for a reasonable finder of fact to conclude that the state proved beyond a reasonable doubt that he was the initial aggressor.[3] We disagree.

The legal principles regarding a claim of self-defense are well settled. Self-defense is a justification defense pursuant to General Statutes § 53a-16 and is a complete defense to a charge of assault in the third degree in violation of § 53a-61 (a) (1). See also General Statutes §§ 53a-12 (a) and 53a-19. In claiming self-defense, the defendant admits engaging in the otherwise illegal conduct but claims he legally was justified, and, therefore, his conduct was not criminal. See *State* v. *Collins*, 100 Conn. App. 833, 849, 919 A.2d 1087, cert. denied, 284 Conn. 916, 931 A.2d 937 (2007). "Under our Penal Code . . . a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556,

---

or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. . . .

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when . . . (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

[3] The defendant further contends that the court committed reversible error in concluding that he did not reasonably perceive the need to defend himself and that he used unreasonable physical force in defending himself. Because we conclude that the court's finding that the defendant was the initial aggressor was not clearly erroneous, we need not discuss the defendant's additional arguments.

571, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007).

"[T]he standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence. . . . In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty. . . . We are mindful as well that [t]he state has the burden of disproving the defense of justified use of force . . . beyond a reasonable doubt. . . . Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the [trier of fact], to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . As long as the evidence presented at trial was sufficient to allow the [finder of fact] reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained." (Citation omitted; internal quotation marks omitted.) *State* v. *Wortham*, 80 Conn. App. 635, 640–41, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004).

A defendant who acts as an initial aggressor is not entitled to the protection of the defense of self-defense. *State* v. *Singleton*, 292 Conn. 734, 762, 974 A.2d 679

(2009). The initial aggressor, however, is not necessarily the first person who uses physical force. *State* v. *Jimenez*, 228 Conn. 335, 340, 636 A.2d 782 (1994). Section 53a-19 contemplates that a person who reasonably perceives a threat of physical force may respond with physical force without becoming the initial aggressor and forfeiting the defense of self-defense. Id., 341. The initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person. *State* v. *Singleton*, supra, 763.

In response to the defendant's motion for articulation, the court articulated three findings of fact. First, the court found that the defendant was the initial aggressor. The court also found that the verbal dispute escalated as a result of the defendant's physically confronting the victim. Finally, the court found that the defendant's testimony that the victim initially punched the defendant was not credible. The court did not, however, specify the evidentiary basis for the finding that the defendant was the initial aggressor. Viewing the evidence in the light most favorable to sustaining the court's determination of guilt, we conclude that sufficient evidence was presented at trial to support the court's finding that the defendant was the initial aggressor regardless of whether it viewed the fight as occurring in one phase or two phases.

We first consider the court's finding within the framework of a single phase fight. The evidence established that until the time the defendant physically confronted the victim, the two men were engaged in a verbal dispute. This fact is supported in the video recording exhibit, which depicts the defendant moving to stand up before the victim and the victim reacting by standing up and possibly attempting to strike the defendant.[4]

---

[4] It is unclear from the court's articulation whether its finding that it "did not credit the defendant's claim that the victim initially punched the defendant, bloodying his nose," was a finding that the victim did not punch

Accepting this sequence of events, the court reasonably could have concluded that the defendant was the initial aggressor because, although it may have been the victim who first punched the defendant, the defendant was the party who invited the physical response from the victim. Id. In light of such a conclusion, the court reasonably could have concluded that the state disproved the defendant's self-defense claim beyond a reasonable doubt.

Alternatively, the court could have interpreted the recording as depicting the fight occurring in two phases. The first phase occurred when the two men stood and faced each other. The second phase occurred after the victim returned to his seat, when the defendant lunged at the victim, considered stabbing the victim in the eye with a pen and proceeded to bite his ear. The defendant testified that, even after he put the pen down and had composed himself, he "didn't want to pull out" and "didn't want to stop it now . . . ." In his statement to Bistany, the defendant said that the reason for his biting the victim's ear was because he was "still angry [at the victim] for putting his hands on me." Viewing the evidence in the light most favorable to sustaining the court's decision, the court reasonably could have found that the defendant was the initial aggressor of the second phase of the fight and attacked the victim out of anger, rather than fear that the victim intended to use physical force on him. Based on this interpretation of the events, the court properly could have concluded that the state disproved the defendant's self-defense claim beyond a reasonable doubt.

Regardless of whether the court concluded that the fight took part in one phase or two, it is clear that the

---

the defendant prior to the defendant biting him, as the victim claims, or that the victim did not punch the defendant unprovoked by the defendant's standing up to confront him.

court discredited the defendant's testimony that the victim initiated the confrontation by first punching the defendant and, instead, found that the defendant was the initial aggressor. The evidence before the court was sufficient to support the court's reasonable conclusion that the state disproved beyond a reasonable doubt the defendant's claim of self-defense.

The judgment is affirmed.

In this opinion the other judges concurred.