STATE OF CONNECTICUT *v.* CHARLES MARSHALL
(AC 32399)

STATE OF CONNECTICUT *v.* RICHARD MARSHALL
(AC 32403)

Robinson, Espinosa and Pellegrino, Js.

Argued October 25—officially released December 27, 2011

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Patrick J. Griffin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Charles Marshall,[1] appeals from the trial court's judgments of conviction and revocation of his probation, following a trial to the court, of two counts of burglary in the second degree in violation of General Statutes § 53a-102 (a) (2), two counts of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) and (a) (2), assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and two counts of violation of probation. On appeal, the defendant contends that: (1) there was

---

[1] Charles Marshall and Richard Marshall are the same individual, and the two matters were consolidated and tried in one proceeding.

insufficient evidence (a) to establish that he was guilty of assault because the state failed to disprove his claim of self-defense, (b) to convict him of burglary in the first degree for the burglary that occurred at 103 Waterville Street, and (c) to establish that he was the individual who committed the burglaries at 29 and 103 Waterville Street; and (2) the trial court abused its discretion in finding that he violated his probation. We affirm the judgments of the trial court.

The following facts, as found by the court, are relevant to the disposition of the defendant's appeals. On the morning of July 26, 2007, the defendant entered the premises located at 29 Waterville Street in Waterbury with the intent to steal. The defendant proceeded to enter 103 Waterville Street with the intent to steal in the afternoon of July 26, 2007. The defendant entered the premises at both locations by prying open the doors with a screwdriver. The defendant also was armed with a tire iron, a dangerous instrument, during the commission of both of the burglaries. Luis "Tito" Infante,[2] the son of the landlord of 103 Waterville Street, chased the defendant from the premises with a baseball bat. Tito, however, did not swing the bat at the defendant during the chase. While in flight from the burglary, the defendant hit Tito in the head with the tire iron, causing severe injury.

The defendant subsequently was arrested and charged with two counts of burglary in the second degree in violation of § 53a-102 (a) (2), two counts of burglary in the first degree in violation of § 53a-101 (a) (1) and (a) (2), assault in the first degree in violation of § 53a-59 (a) (1) and two counts of violation of probation. After a trial to the court, the court determined that the

---

[2] The landlord of 103 Waterville Street had two sons who are both named Luis Infante. The younger son is known by the nickname Tito. Therefore, the younger son will be referred to interchangeably as Tito or the victim.

defendant had not acted in self-defense when he hit the victim. Thereafter, the court convicted the defendant of all charges, revoked his probation and imposed a total effective sentence of sixty-two and one-half years incarceration.[3] These appeals followed.

I

The defendant contends that there was insufficient evidence (a) to establish that he was guilty of assault because the state failed to disprove his claim of self-defense, (b) to convict him of burglary in the first degree for the burglary that occurred at 103 Waterville Street and (c) to establish that he was the individual who committed the burglaries at 29 and 103 Waterville Street. We disagree.

We begin by setting forth the relevant standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable .and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has

---

[3] The defendant entered guilty pleas to two part B informations charging him with being a persistent serious felony offender in violation of General Statutes § 53a-40 (c) and the trial court enhanced the defendant's sentences accordingly.

held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

## A

The defendant's first contention on appeal is that there was insufficient evidence to establish that he was guilty of assault because the state failed to disprove that in striking the victim he reasonably engaged in self-defense. The defendant contends that the state failed to disprove that when he swung the tire iron at the victim that he reasonably believed that the victim would use deadly force or inflict great bodily harm upon him. We disagree.

"The legal principles regarding a claim of self-defense are well settled. Self-defense is a justification defense pursuant to General Statutes § 53a-16 and is a complete defense to a charge of assault in the third degree in violation of [General Statutes] § 53a-61 (a) (1). See also

General Statutes §§ 53a-12 (a) and 53a-19. In claiming self-defense, the defendant admits engaging in the otherwise illegal conduct but claims he legally was justified, and, therefore, his conduct was not criminal. . . . Under our Penal Code . . . a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Skelly*, 124 Conn. App. 161, 166, 3 A.3d 1064, cert. denied, 299 Conn. 909, 10 A.3d 526 (2010).

"[T]he standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence." (Internal quotation marks omitted.) *State* v. *Wortham*, 80 Conn. App. 635, 640, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004).

The following evidence produced at trial is relevant to the defendant's claim. Brian Levin testified that at approximately 1:45 p.m. on the afternoon of July 26, 2007, he heard a loud crashing sound, "like somebody hitting against a garbage can." Levin went outside and saw a young Hispanic male and an older black male, whom he later identified in a photographic array as the defendant, running past his driveway. The Hispanic male was yelling at the defendant, and the defendant was running with a crowbar in his hand. Levin noted that the defendant and the Hispanic male were approximately two and one-half houses away from him, and the defendant, "look[ed] back and seen that the Hispanic male was getting too close to him and he turned around and popped him in the back of the head with

the crowbar." The defendant hit the Hispanic male once, after which he fell to the ground, and the defendant then ran away. Levin claimed that the Hispanic male neither hit the defendant with the baseball bat nor swung the bat.

Jamal Trammell testified that on July 26, 2007, he saw a black male, whom Trammell later identified in a photographic array as the defendant, and a Hispanic male run past him on Waterville Street. The Hispanic male was running after the defendant, yelling that he was going to " 'f' " him up. Trammell believed that he was approximately 80 to 100 yards, or five to seven houses away from the two males at that point. Trammell testified that the Hispanic male swung the bat at the defendant before the defendant hit the victim. Trammell did not see the defendant holding the tire iron. Trammell approached the Hispanic male, who was lying on the ground, and noticed that the young man was bleeding from a hole in his head approximately the size of a quarter. He noticed a crowbar on the ground a few feet away from the victim.

The Waterbury police interviewed the defendant on July 26, 2007, after he waived his *Miranda*[4] rights. The defendant provided a written statement to the police pertaining to the burglary and assault at 103 Waterville Street. The defendant's written statement, which was admitted into evidence, provides in relevant part: "Today I broke into a house on the third floor. I was able to get in through a locked back stairway door and through the unlocked back door of the apartment. When I got inside, I got into a locked room. The room was like a storage room that had stuff that I could pawn to get some money for heroin. While I was in the apartment, a Puerto Rican guy saw me. I went out the back

---

[4] See *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

door and down the back stairs. I went and hid in an open garage that was behind the house. I was hiding behind a car in the garage when a different Puerto Rican guy found me hiding there. The guy had a baseball bat and I ran away. While I was trying to run away, he hit me in the back with the bat. I lost my balance and fell, but I was able to keep running without being hurt to stop. I had a metal pipe with me and I ran with it in my hand. I ran down the street and the Puerto Rican guy was chasing me. I started walking after a little bit and the Puerto Rican guy was walking behind me. Then the Puerto Rican guy started running after me again. I started to run for a little while, but I got tired and stopped. The Puerto Rican guy ran up to me and I hit him in the head with the pipe I had. The Puerto Rican guy fell on the ground and I dropped the pipe. . . ."

The defendant, however, gave conflicting testimony at trial. The defendant testified that on July 26, 2007, he went to 103 Waterville Street at approximately 1:30 p.m. because he believed the person who lived there hid heroin in the garage. The defendant testified that he went inside the garage to look for drugs, and "the little guy" came after him in the garage and hit him in the back with a baseball bat. The defendant claimed he spotted a pipe on the floor in the garage, picked it up and took off running with the "little guy" chasing after him and yelling threats. The defendant testified that the victim swung the baseball bat at him during the chase but that it did not make contact. The defendant claimed that he then threw the pipe at the victim, who fell to the ground, and that he then ran off. The defendant acknowledged that he provided a written statement to the police and that he signed the written statement, but he claimed at trial that he did not read the statement. In regard to the burglary at 29 Waterville Street, the defendant maintained that he was at home

at approximately 11:30 a.m. and did not commit that offense.

The defendant's primary contention is that the state failed to disprove that when the defendant swung the tire iron at the victim, he reasonably believed that the victim was about to inflict great bodily harm against him. The defendant maintains that he fled 103 Waterville Street and was being chased by an angry younger male with a baseball bat. As a result, he argues that he reasonably feared that the victim was about to inflict great bodily harm on him.

General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Thus, in order to invoke the defense of self-defense, one must reasonably believe that an individual is going to use deadly force or inflict great bodily harm against him.

On the basis of the evidence and the rational inferences that could be drawn therefrom, the court reasonably determined that the defendant did not have a subjective belief that deadly physical force was necessary. The defendant ran away from 103 Waterville Street, with the victim following in close proximity. The victim, however, did not take any action to illustrate an intention to inflict great bodily harm on the defendant. Levin testified that he was approximately two and one-half houses away from the two individuals running, and did not see the victim swing the baseball bat at the

defendant. Rather, he witnessed the defendant stop running, turn around and swing the tire iron at the victim's head. Although Trammell testified that he saw the defendant swing, the court reasonably could have concluded that he was at a much farther distance from the altercation, as evidenced by his testimony that he did not see the defendant carrying the tire iron. Furthermore, in discounting Trammel's version, the court could have reasoned that Levin's testimony is supported by the defendant's written statement to the police. In that statement, the defendant explicitly stated that "[t]he Puerto Rican guy ran up to me and I hit him in the head with the pipe I had." Nowhere in the defendant's statement does he mention the victim swinging the baseball bat at him during the chase, even though he did explicitly mention that the victim hit him with the bat while in the garage at 103 Waterville Street. The defendant did not tell the police when he provided his written statement that he acted in self-defense, or that he was fearful of great bodily injury. As a result, there was sufficient evidence that the defendant did not have a subjective belief that deadly physical force was necessary.

Furthermore, we note that although the defendant testified that the victim swung the baseball bat at him and that the police did not take his statement accurately, the court discredited any exculpatory aspects of the defendant's testimony. "[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . As such, the trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility." (Internal quotation marks omitted.) *State* v. *Miller*, 122 Conn. App. 631, 635, 999 A.2d 844 (2010). By virtue of his written

statement and his trial testimony, the defendant provided conflicting accounts of what had occurred. The court therefore reasonably determined that the defendant was not a credible witness.

Even if the defendant did subjectively believe that the victim was about to use deadly force against him, such belief would be unreasonable. As outlined above, the victim did not demonstrate to the defendant that he was going to use deadly physical force. On the basis of the evidence, the court reasonably determined that the victim did not swing the bat at the defendant during the chase. The defendant's own statement, as well as the testimony of Levin, demonstrates that the defendant stopped running and turned and struck the victim with the tire iron. Deadly force may only be used when the circumstances demonstrate that such force is reasonably necessary. On the basis of our review of the record, we conclude that the evidence was legally sufficient to support the court's finding that the defendant did not act in self-defense.

B

The defendant next contends that there was insufficient evidence to convict him of burglary in the first degree under § 53a-101 (a)[5] for the break-in at 103 Waterville Street. The defendant asserts two bases for this claim: first, that there was insufficient evidence to demonstrate that the defendant was armed with a

---

[5] General Statutes § 53a-101 (a) provides that "[a] person is guilty of burglary in the first degree when (1) such person enters or remains unlawfully in a building with intent to commit a crime therein and is armed with explosives or a deadly weapon or dangerous instrument, or (2) such person enters or remains unlawfully in a building with intent to commit a crime therein and, in the course of committing the offense, intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone, or (3) such person enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

dangerous instrument, and second, that there was insufficient evidence that the defendant injured anyone during the course of the burglary or in the immediate flight therefrom. We disagree.

The following evidence produced at trial is relevant to the defendant's claim. Kevin Chamberland testified that at approximately 10:30 a.m. on July 26, 2007, he heard noises emanating from the second floor landing of 29 Waterville Street and, upon investigation, he encountered a man on the landing of the second floor whom he later identified in a photographic array as the defendant. Chamberland described the defendant as wearing a gray sweater or sweatshirt and baggy pants. He asked the defendant if he was a resident of the building, or knew any resident of the building, to which the defendant responded in the negative. Chamberland then asked the defendant to leave and walked him out of the house. A few minutes later, he again heard noises, and went to the second floor to investigate. He came across the defendant with one half of his body sticking out of the second floor window, using a screwdriver to scrape the vinyl siding off of the house. Chamberland again asked the defendant to leave and escorted him out of the back of the house.

Lourdes Hernandez testified that at approximately 11:20 a.m. on July 26, 2007, she opened the door of her bedroom on the second floor of 29 Waterville Street, where she found a man, whom Hernandez later identified in a photographic array as the defendant, in her living room going through her purse. Hernandez saw that the defendant had some type of tool in his pants, which she identified at trial as a tire iron.[6] Hernandez

---

[6] On cross-examination, Hernandez noted that she was nervous when she gave her statement to the police and did not mention that the defendant had a tool on his person. Instead, she only mentioned that the defendant had a tool when preparing for the case with the prosecutor.

described the defendant as wearing a yellow striped shirt and dark pants, and carrying a screwdriver.

Miguel Rios testified that he rented a room on the third floor of a house located at 103 Waterville Street in Waterbury. At approximately 1 p.m., Rios opened his bedroom door and noticed that one of the doors in the hallway was ajar. He turned on the light and saw a man, whom he later identified in a photographic array as the defendant. Rios described the defendant as wearing a short sleeve black shirt and blue jeans. The defendant was carrying a few bags, and, after being confronted by Rios, the defendant dropped the bags and ran out of the house.

Upon being told by Rios about the incident, Gregoria Infante and her sons Luis and Tito went up to the third floor to investigate. Luis testified that he then went downstairs and saw the defendant hiding behind one of the cars in the garage. Luis described the defendant as wearing dark clothes. Luis yelled at the defendant, and the defendant ran away, carrying a tire iron. Tito came out of the house with a bat, and despite being told by Luis to "leave it," took off after the defendant.

Police investigations at both sites revealed evidence of forced entry. At 103 Waterville Street, there was damage to both exterior and interior doors, consistent with a flathead screwdriver. The damage at 29 Waterville Street was also consistent with the use of a screwdriver. The size and scope of the damage was consistent at both locations.

Additionally, there was evidence that officers found the defendant, who was wearing a black shirt and jeans, on the front porch of a nearby house breathing heavily and sweating profusely. Six witnesses; Chamberland, Hernandez, Rios, Luis Infante, Levin and Trammel; viewed photographic arrays of possible suspects. Each of these witnesses positively identified the defendant.

First, the defendant maintains that there is insufficient evidence to demonstrate that he was armed with a dangerous instrument while committing the burglary. The defendant contends that his testimony that he found the pipe in the garage at 103 Waterville Street paired with the testimony that the damage to the door frames was consistent with a screwdriver and not with a tire iron demonstrates that he was not armed with a dangerous instrument at the time of the burglary.

Viewing the evidence in the light most favorable to sustaining the verdict, the court reasonably determined that the defendant was armed with a dangerous instrument, here a tire iron, when he committed the burglary at 103 Waterville Street. Hernandez identified the defendant as the individual who was in her apartment at 29 Waterville Street on July 26, 2007. She testified that the defendant was carrying a tool in his pants, which she identified in court as the tire iron later recovered by police. In its decision, the court found Hernandez' testimony concerning the tire iron to be credible. "[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) State v. Miller, supra, 122 Conn. App. 635. Rios also identified the defendant as the individual who was on the third floor of 103 Waterville Street. Upon fleeing the scene of 103 Waterville Street, Rios witnessed the defendant carrying a tire iron. On the basis of the testimony of Hernandez, the court reasonably could find that the defendant had a tire iron on his person on the morning of July 26, 2007. The court could then reasonably infer that the defendant also had the tire iron on his person when he entered 103 Waterville Street, as the defendant was seen with a tire iron when fleeing the scene.

The defendant also asserts that there was insufficient evidence to demonstrate that he injured anyone during

the course of the burglary, or in the immediate flight therefrom. The defendant maintains that because the altercation between the defendant and the victim took place approximately one-quarter mile from 103 Waterville Street, that he had terminated any burglary attempt by the time he allegedly injured the victim. We disagree.

General Statutes § 53a-101 provides in relevant part that "(a) A person is guilty of burglary in the first degree when . . . (2) such person enters or remains unlawfully in a building with intent to commit a crime therein and, in the course of committing the offense, intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone . . . ." General Statutes § 53a-101 (b) specifically provides that "[a]n act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission."

In *State* v. *Maxwell*, 29 Conn. App. 704, 706, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied, 509 U.S. 930, 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993), after the defendant attempted to enter the victim's house unlawfully, the victim confronted the defendant in front of the residence. The two individuals engaged in a physical struggle that proceeded to an area beyond the victim's property. Id., 707. The defendant then intentionally assaulted the victim. Id. The defendant was convicted of burglary in the first degree under § 53a-101 (a) (2). Id., 705. On appeal, the defendant contended that the bodily injury occurred after the defendant had terminated his burglary attempt, and accordingly the assault was a separate and distinct occurrence. Id., 710–11. This court upheld the defendant's conviction, maintaining that under § 53a-101 (a) (2) "to conclude that, by the simple expedient of running beyond the property line and abandoning his attempt to enter the building, a defendant was no longer in flight from his attempt, would create the kind of

bizarre result that we are mandated to avoid in statutory construction." Id., 712.

On the basis of the evidence, the court reasonably determined that the defendant struck the victim when he was in flight from the commission of the burglary. Simply because the defendant ran beyond the property line of 103 Waterville Street is not sufficient to demonstrate that the defendant was not in flight from the commission of a burglary. Rios testified that the defendant was on the third floor of 103 Waterville Street. The defendant then fled to the backyard, but was spotted by Luis Infante. The defendant then tried to escape from the scene of the burglary only to be chased by the victim. The defendant was running in a direct, unbroken route from 103 Waterville Street when he turned and struck the victim. Accordingly, the court reasonably determined that the defendant was in flight from the burglary when he struck the victim. On the basis of our review of the record, we conclude that the evidence was legally sufficient to support the court's finding that the defendant was armed with a dangerous instrument when he entered 103 Waterville Street, and that he injured the victim while in immediate flight from the commission of the burglary.

## C

The defendant next contends that there was insufficient evidence that he was the individual who committed the burglaries at 29 and 103 Waterville Street. The defendant argues that the cumulative force of the evidence failed to demonstrate beyond a reasonable doubt that he perpetrated the burglaries due to the conflicting descriptions of the suspect and because he was not found with the screwdriver allegedly used in the burglaries. We disagree.

Various witnesses provided conflicting statements concerning what the suspect was wearing. Chamberland described the suspect as wearing a sweater or

sweatshirt and baggy pants, Hernandez described the suspect as wearing a yellow striped shirt and dark pants, Rios described the suspect as wearing a black short sleeve shirt and jeans and Luis Infante described the suspect as wearing dark clothes. Each of these witnesses, however, identified the defendant in a photographic array at the police station on the day of the burglary as the individual who burglarized 29 Waterville Street and 103 Waterville Street.

Furthermore, the defendant was apprehended shortly after the assault had occurred, and he was wearing clothes that matched the description given by both Rios and Luis Infante. The defendant also admitted in his written statement that he had broken into the third floor at 103 Waterville Street. On the basis of this evidence, the court reasonably found that the defendant was the individual who committed the burglary at 103 Waterville Street.

Although Chamberland and Hernandez' description of the suspect's clothing varies from what the defendant was wearing when apprehended, there was a time period in which the defendant is unaccounted for after the burglary at 29 Waterville Street. It is reasonable to infer that the defendant wore different clothing to each house on that day. Furthermore, the defendant was identified by both Chamberland and Hernandez as the individual who burglarized 29 Waterville Street. Moreover, the damage to the premises of 29 Waterville Street was consistent with the damage to 103 Waterville Street, and the defendant admitted to breaking into the third floor of 103 Waterville Street, and was spotted with a screwdriver that morning. Although the defendant did not have a screwdriver on his person when he was apprehended, there is enough evidence for the court to find that the defendant was the individual who committed the burglaries at issue. On the basis of our review of the record, we conclude that the evidence was legally

sufficient to support the court's finding that the defendant was the individual who committed the burglaries at 29 Waterville Street and 103 Waterville Street.

## II

Lastly, the defendant contends that the court abused its discretion in finding that he violated his probation. The defendant maintains that because there was insufficient evidence that he committed the burglaries and because he acted in self-defense when he assaulted the victim, the court's findings that the defendant had committed the burglaries and the assault while on probation were clearly erroneous.

There is no dispute that the defendant was on probation on July 26, 2007, and that one of the conditions of his probation was that he refrain from violating any state criminal law. Because we have concluded that there was sufficient evidence to demonstrate that the defendant did not act in self-defense and that the defendant committed the burglaries at 103 Waterville Street and 29 Waterville Street, the court did not abuse its discretion in finding that the defendant violated his probation.

The judgments are affirmed.

In this opinion the other judges concurred.