MICHAEL BROWN *v.* COMMISSIONER
OF CORRECTION
(AC 31707)

Bishop, Espinosa and Borden, Js.

498

Argued May 16—officially released September 20, 2011

*Deren Manasevit,* special public defender, for the appellant (petitioner).

*Rita M. Shair,* senior assistant state's attorney, with whom were *John A. East III,* senior assistant state's attorney, *Erika L. Brookman,* assistant state's attorney, and, on the brief, *Gail P. Hardy,* state's attorney, for the appellee (respondent).

*Opinion*

ESPINOSA, J. Upon the granting of certification to appeal by the habeas court, the petitioner, Michael Brown, appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. The petitioner claims that the court improperly failed to conclude that his trial counsel rendered ineffective assistance that affected the outcome of his criminal trial. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to the present appeal. In 2004, the petitioner was convicted, following a jury trial, of sexual assault in the third degree, unlawful restraint in the first degree, threatening in the second degree, assault in the third degree and breach of the peace in the second degree.

The conviction was related to an incident that occurred on September 20, 2002, involving the petitioner and a female victim. The trial court imposed a total effective sentence of five years imprisonment, suspended after three years, followed by a ten year period of probation with special conditions. Following the petitioner's direct appeal, this court affirmed the judgment of conviction. *State* v. *Brown*, 96 Conn. App. 700, 901 A.2d 86, cert. denied, 280 Conn. 912, 908 A.2d 539 (2006).

On September 23, 2008, the petitioner filed this second amended petition for a writ of habeas corpus, alleging that his trial attorney, Scott Sandler, rendered ineffective assistance in a number of ways related to his pretrial investigation and his representation of the petitioner during the trial.[1] Relevant to the claim raised on appeal, the petitioner alleged that Sandler (1) failed to investigate adequately the relationship that existed between the victim and R, one of the police officers involved in the petitioner's arrest; (2) failed to cross-examine the victim adequately; (3) failed to locate and present testimony from D, R's former wife and a potential impeachment witness; (4) failed to present testimony from a private investigator concerning the crime scene; and (5) inadequately advised the petitioner concerning his decision not to testify at the underlying trial. In a thorough memorandum of decision, the court rejected the petitioner's claims. After the court granted certification to appeal, this appeal followed.

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not

---

[1] In addition to his ineffective assistance of counsel claim, the petitioner alleged that the prosecutor failed to disclose exculpatory information to the defense in violation of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In its decision denying the petition, the habeas court concluded that the petitioner was procedurally defaulted from raising this claim and did not address it. On appeal, the petitioner does not challenge the court's decision in this regard.

be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 834–35, 970 A.2d 721 (2009). Having set forth our standard of review, we turn to those portions of the court's ruling that are challenged by the petitioner in this appeal.

I

The petitioner argued before the habeas court that Sandler rendered ineffective assistance in that he failed to investigate adequately the relationship that existed

between the victim and R, one of the police officers involved in the petitioner's arrest. The court found that, at the earliest, Sandler became aware that a personal relationship existed between the victim and R on the first day of the petitioner's criminal trial. It is undisputed that Sandler did not request a continuance to investigate the relationship or to compel R to testify concerning the relationship. R did not testify at trial, and Sandler invited the jury to draw an adverse inference from the fact that the state did not call him as a witness in its case. The record reflects, and the court found, however, that Sandler used his limited knowledge of the relationship during a thorough cross-examination of the victim as a basis for discrediting her testimony.

In rejecting the ineffectiveness claim, the court relied upon the fact that the petitioner failed to present any evidence that the relationship at issue was ongoing on the date of the incident or that the relationship had any effect upon the police investigation into the petitioner's criminal conduct. Further, the court found that if, as the petitioner asserts, Sandler had requested a continuance to investigate the relationship further, the investigation "would have revealed nothing more than that which was revealed at the habeas hearing by the petitioner: a witness [D] who, if allowed to testify and [if] found credible, would have simply placed the start date of the relationship (arguably a matter that is collateral) at a point in time that was not consistent with the trial testimony of the [victim]." The court found that the evidence presented at the habeas trial supported Sandler's decision not to request a continuance for the purpose of investigating the relationship to any greater degree. As the court found, such investigation "would have added nothing of benefit to the petitioner's criminal case."

On the basis of the facts found by the court, which are supported by our careful examination of the record,

the petitioner cannot prevail on this claim. The court properly found that the facts surrounding the relationship were collateral to the issues before the jury and that Sandler effectively used his limited knowledge of the relationship in an attempt to discredit the victim. "The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." *Holley* v. *Commissioner of Correction,* 62 Conn. App. 170, 175, 774 A.2d 148 (2001). Moreover, based upon our review of the evidence presented at the habeas trial, the petitioner has failed to demonstrate that the claimed deficiencies in Sandler's investigation were likely to have had any affect on the outcome of the underlying trial.

At the criminal trial, the victim testified that she began living with R for approximately one year prior to the trial and that she was in a romantic relationship with R since approximately December, 2003. At the habeas trial, R's former wife, D, testified that she discovered evidence that R was having an extramarital affair with the victim in November, 2002. Additionally, D testified that, in the early part of 2003, she confronted the victim concerning the affair. Although Sandler did not locate D or present her testimony at the criminal trial, we conclude that it was unlikely to have had a significant impact upon the jury's assessment of the victim's testimony in general or, more importantly, the petitioner's criminal liability. There simply was no evidence that the relationship existed before the sexual assault or that the relationship affected the police investigation or the victim's recollection of the events of September 20, 2002. Accordingly, there is no showing of deficient performance and prejudice related to the failure to investigate, and the petitioner cannot prevail on this claim.

II

The petitioner next claims that Sandler rendered ineffective assistance by failing to cross-examine the victim

adequately concerning her relationship with R. Essentially, the petitioner argues that Sandler failed to discredit the victim by eliciting facts concerning her relationship with R. We disagree.

The court found that Sandler conducted a lengthy cross-examination of the victim that was both "vigorous" and "far reaching . . . ." Our review of the record reflects that the cross-examination covered many topics relevant to assessing the victim's credibility, including the extent of the victim's relationship with R and when that relationship commenced. Nevertheless, the petitioner asserts that, during cross-examination of the victim, Sandler "found out nothing about [the victim's] relationship with [R]." The record, however, reflects that Sandler elicited from the victim that she was residing with R at the time of the trial, had been residing with R for approximately one year prior to the trial and that, since December, 2003, the victim had been in an intimate relationship with R. Through cross-examination, Sandler also elicited from the victim that R was one of the responding officers on the day of the incident and that she provided a statement to him concerning what had occurred with the petitioner. She added that, although she met R again sometime after the incident, they did not initially recognize each other. The victim testified, also in response to Sandler's inquiry, that she could not recall how long she had been living with R before they remembered their interaction at the scene of the crime.

Sandler unambiguously brought to the jury's attention the fact that the victim's relationship with R was relevant to assessing her credibility. Sandler asked: "So, the officer to whom you [gave] your detailed statement of being sexually assaulted is the same gentleman [with] whom you have an intimate relationship with now?" The victim replied, "Now, yes." Furthermore, Sandler raised the possibility that the relationship might affect

the victim's testimony and recollection of events. In this vein, Sandler asked the victim if, during the course of their relationship, she discussed the facts of the petitioner's criminal trial with R, if the victim discussed with R the fact that she had to testify in court and if the victim asked R to anticipate questions that might be asked of her during her examination at trial. The victim replied that she had not discussed any of these things with R because she did not want to discuss the incident with him.

Our review of the record makes clear that Sandler attempted to discredit the victim's testimony by inquiring about her romantic relationship with R. This line of inquiry was part of an extensive cross-examination that the habeas court aptly characterized as vigorous and thorough. Through speculative argument before this court, the petitioner urges us to conclude that cross-examination following a more thorough investigation into the victim's relationship with R would have resulted in an adequate cross-examination of the victim. As we already have discussed herein, the petitioner has failed to demonstrate that the fruit of an additional investigation by Sandler likely would have made any difference in either the effectiveness of Sandler's cross-examination of the victim or the outcome of the trial. For these reasons, we reject the petitioner's claim.

### III

Next, the petitioner claims that Sandler was ineffective in that he failed to locate and to present testimony from D, R's former wife. We disagree.

The substance of D's habeas testimony, which was previously discussed, will not be repeated here. Given that testimony, we conclude, as did the habeas court, that it is very unlikely that D's testimony, if credited by the jury, would have had any significant effect upon

its consideration of the petitioner's guilt. The relationship between the victim and R was not related directly to the petitioner's guilt or innocence but was a collateral matter related to the jury's assessment of the victim's credibility. D did not testify that the victim's relationship with R predated R's police investigation of the petitioner's criminal conduct, let alone that it had any effect upon that investigation. Although D testified at the habeas trial that she would have testified at the criminal trial on the petitioner's behalf, it would be highly speculative to conclude that D would have been a strong witness for the defense or that her testimony would have been admissible evidence, as it related to purely collateral issues. Because D testified that her marriage to R ended because of R's relationship with the victim, it would have been reasonable for the jury to conclude that D was far from an impartial witness when it came to matters involving the victim. Similarly, Sandler, having heard D's testimony, never testified that, as a matter of trial tactics, he would have called D to testify on the petitioner's behalf. Instead, he identified weaknesses in her testimony. The record reflects that Sandler attempted to impeach the victim during a lengthy and thorough cross-examination that covered many topics, including the victim's relationship with R. Accordingly, we conclude that his failure to locate D and present her testimony did not affect the outcome of the petitioner's trial.

IV

The petitioner also claims that Sandler rendered ineffective assistance in that he failed to present testimony from a private investigator concerning the crime scene. This claim is also without merit.

At the criminal trial, the victim testified that the sexual assault perpetrated by the petitioner took place in a small bathroom. Sandler hired Donald Light, a private

investigator, to investigate the case. During his investigation prior to the criminal trial, Light photographed and took measurements of the bathroom where the incident was alleged to have occurred. Sandler did not present evidence from Light during the criminal trial. Light testified at the habeas trial and opined that it was possible that the assault could have taken place in the bathroom, despite its small size, and that a lock on the bathroom door could have been disabled by the petitioner. These observations were consistent with the victim's version of events. At the habeas trial, Sandler testified that, as a matter of trial strategy, he did not present Light's testimony because it did not tend to cast doubt upon the victim's testimony.

The petitioner urges us to conclude that Sandler's decision not to present Light's testimony was unsound because, although the testimony would not have directly contradicted the victim's testimony, it would have made her testimony seem "highly unlikely, even if theoretically possible." We decline to second-guess Sandler's decision not to present the evidence at issue when there is no evidentiary or logical basis upon which to conclude that the decision not to present the evidence caused any prejudice to the petitioner—the evidence merely tended to corroborate the petitioner's version of events. Both the evidence presented at the habeas trial and the petitioner's arguments are insufficient to overcome the strong presumption of correctness afforded to the strategic decision made by trial counsel. See, e.g., *Stepney* v. *Commissioner of Correction*, 129 Conn. App. 364, 368, 19 A.2d 1262 (2011).

V

Finally, the petitioner argues that Sandler inadequately advised him concerning his decision not to testify at the underlying trial. We disagree.

There was uncontroverted evidence presented at the habeas trial that Sandler advised the petitioner not to testify at his criminal trial and that the petitioner decided not to testify. The petitioner claimed before the habeas court that Sandler was ineffective in so advising him. The habeas court found that Sandler and the petitioner spent a great deal of time discussing the issue and that Sandler reasonably determined that it was in the petitioner's best interest that he not testify. In reaching this factual determination, the court noted that there was evidence presented at the criminal trial to corroborate the victim's version of events in that the petitioner's girlfriend, who was at the residence at the time that the assault allegedly occurred, corroborated the victim's testimony. Specifically, she testified that the petitioner and the victim were, in fact, alone in a bathroom at the time of the alleged assault. Furthermore, there was evidence that, after the alleged assault, the victim locked the petitioner out of the apartment and summoned the police. When the police arrived at the scene, they found the petitioner in a common hallway of the apartment, in an agitated state and wearing only boxer shorts. As the habeas court reasonably found, it would have been difficult for the petitioner, testifying before the jury, to have offered a benign explanation with regard to this strong evidence. Additionally, the habeas court found that there were weaknesses in the police investigation of the crime as well as a dearth of physical evidence from the crime scene. These deficiencies, the court determined, provided a basis upon which to cast doubt on the state's case without requiring the petitioner to testify.

The petitioner argued before the habeas court that he was eager to testify at the criminal trial and that his background, specifically, his prior military service, would have been a favorable attribute in the eyes of

the jury. The court, however, found that the topics concerning which the petitioner wanted to testify were not substantial in nature in that they were not likely to have affected the jury's consideration of his alleged criminal conduct. The court found that "there was no offer of testimony provided to the habeas court as to the manner in which the petitioner would have helped his cause in the event he testified at the underlying trial." Furthermore, the court agreed with Sandler that there were sound reasons to question whether the petitioner's record of military service would, as the petitioner argued, necessarily have strengthened his credibility in the eyes of the jurors.

The court concluded that Sandler reasonably relied upon the fact that there was ample evidence that the petitioner had placed himself in compromising situations that would have been difficult for the petitioner to explain to the jury. Additionally, Sandler was mindful that the petitioner had behaved in a belligerent manner in the presence of the police. In advising the petitioner, Sandler relied upon the fact that there were deficiencies in the police investigation and a lack of physical evidence to support the state's case. Additionally, there were ample grounds upon which to challenge the victim's credibility. There was no claim made by the petitioner that Sandler provided inaccurate or incomplete information to him relevant to his decision not to testify. Instead, he argues that Sandler should have advised him differently.

Upon our review of the arguments of the petitioner and the evidence presented before the habeas court, we conclude that the habeas court's analysis is correct—there is nothing in the record to suggest that Sandler's advice was not the product of reflective and sound trial strategy. The court properly considered the myriad of factors that were relevant to Sandler's advice to the petitioner. Predictably, the petitioner testified at

the habeas trial that he did not assault the victim. The petitioner, however, did not present any other substantive testimony to call into doubt the victim's version of events. Furthermore, a reasonable assessment of the evidence presented at the criminal trial supports Sandler's reservations concerning the petitioner's desire to testify. The petitioner has not presented evidence that the advice given by Sandler was not the result of a competent, if not successful, trial strategy that was within the realm of effective representation. Thus, we conclude that Sandler rendered effective assistance by advising the petitioner not to testify, advice that the petitioner heeded in making his own decision not to take the witness stand at his criminal trial.

The judgment is affirmed.

In this opinion the other judges concurred.