******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CHARLES MARSHALL *v.* COMMISSIONER OF CORRECTION
## (AC 38861)

Sheldon, Bright and Harper, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of burglary in the second degree, burglary in the first degree and assault in the first degree, and of violation of probation, sought a writ of habeas corpus, claiming that his trial counsel rendered ineffective assistance. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly determined that the petitioner's trial counsel did not provide ineffective assistance due to an actual conflict of interest as a result of his prior representation of a witness in an unrelated criminal case: the petitioner failed to demonstrate that his trial counsel had actively represented a conflicting interest and that it adversely affected his trial counsel's performance, as the petitioner did not produce any evidence that his trial counsel received confidential information during his representation of the witness that would have affected the petitioner's defense or limited trial counsel's ability to effectively cross-examine the witness, and a mere theoretical division of loyalties was not enough to establish a conflict of interest; moreover, even if trial counsel had confidential information, that did not adversely affect his performance because the information necessary to cross-examine the witness as to his pending criminal charges was available as a matter of public record to trial counsel, who was not precluded from questioning the witness about those pending charges; furthermore, given that the witness' testimony at the petitioner's criminal trial was substantially similar to the statement he had given to the police shortly after witnessing the assault, and that the petitioner's own written statement to the police demonstrated that he did not act in self-defense, there was a sound tactical reason for trial counsel not to cross-examine the witness with the pending charges.

2. The petitioner's claim that his trial counsel rendered ineffective assistance in failing to object to the trial court's exclusion of the petitioner from participating in an in-chambers conference concerning counsel's alleged conflict of interest was not reviewable; on the basis of trial counsel's testimony at the habeas trial that he recalled an in-chambers conference about the potential conflict of interest but was not sure if a detailed discussion with the trial judge had occurred, and the insufficient record, this court was unable to determine the scope of the discussion that transpired during the in-chambers conference, which precluded review of the claim.

3. The habeas court properly determined that the petitioner's trial counsel did not provide ineffective assistance by failing to move to suppress a witness' identification of the petitioner from a photographic array, which the petitioner claimed was unduly suggestive because he was the only person wearing a striped shirt in the array and the witness previously had told the police that the perpetrator was wearing a striped shirt; the habeas court properly determined that trial counsel had a reasonable basis to conclude that a motion to suppress one or more of the photographic identifications would not have been granted given that there were a total of six photographic identifications against the petitioner, and the petitioner failed to demonstrate that his trial counsel's performance was deficient or how he was prejudiced in light of the fact that he was positively identified by five other witnesses.

4. The habeas court properly determined that the petitioner's trial counsel did not provide ineffective assistance in failing to challenge the consolidation of the petitioner's two criminal cases for trial; that court concluded that trial counsel's decision to not oppose the state's motion to consolidate was reasonable and founded on reasonable strategic grounds, and although the petitioner claimed that because his charges stemming from one burglary included a violent crime, the consolidation

of his trial on those charges with the charges arising from a second burglary not involving any violent crime caused him undue prejudice, that claim was based on speculation and was insufficient to overcome the strong presumption of correctness afforded to the strategic decision made by trial counsel.

Argued April 11—officially released September 18, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Prats, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Gwendolyn S. Bishop*, assigned counsel, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney and *Eva Lenczewski*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Charles Marshall, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erroneously determined that his trial counsel did not provide ineffective assistance by (1) having an actual conflict of interest as a result of his prior representation of a witness in an unrelated criminal case; (2) failing to object to the trial court's exclusion of the petitioner from participation in an in-chambers conference; (3) failing to move to suppress one witness' identification of him from a photographic array; and (4) failing to challenge the consolidation of his two criminal cases for trial.[1] We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history, as summarized by this court in the petitioner's direct appeal, are relevant: "On the morning of July 26, 2007, the [petitioner] entered the premises located at 29 Waterville Street in Waterbury with the intent to steal. The [petitioner] proceeded to enter 103 Waterville Street with the intent to steal in the afternoon of July 26, 2007. The [petitioner] entered the premises at both locations by prying open the doors with a screwdriver. The [petitioner] also was armed with a tire iron, a dangerous instrument, during the commission of both of the burglaries." *State* v. *Marshall*, 132 Conn. App. 718, 721, 33 A.3d 297 (2011), cert. denied, 303 Conn. 933, 36 A.3d 693 (2012).

Two witnesses, Kevin Chamberland and Lourdes Hernandez, separately encountered the petitioner while he was burglarizing 29 Waterville Street. Id., 730. Chamberland escorted the petitioner out of the second floor landing at approximately 10:30 a.m.; Hernandez found the petitioner in her second floor living room at approximately 11:20 a.m. Id. Another witness, Miguel Rios, confronted the petitioner in his third floor apartment at 103 Waterville Street at approximately 1 p.m. and informed the landlord of the burglary. Id., 731. "[The victim], the son of the landlord of 103 Waterville Street, chased the [petitioner] from the premises with a baseball bat. [The victim], however, did not swing the bat at the [petitioner] during the chase. While in flight from the burglary, the [petitioner] hit [the victim] in the head with the tire iron, causing severe injury." (Footnote omitted.) Id., 721.

"[T]here was evidence that officers found the [petitioner] . . . on the front porch of a nearby house breathing heavily and sweating profusely. Six witnesses; Chamberland, Hernandez, Rios, [the victim], [Brian] Levin and [Jamal] Trammell; viewed photographic arrays of possible suspects. Each of these witnesses positively identified the [petitioner]." Id., 731.

The petitioner waived his right to a jury trial and subsequently was convicted of two counts of burglary in the second degree in violation of General Statutes (Rev. to 2007) § 53a-102 (a) (2), two counts of burglary in the first degree in violation of General Statutes (Rev. to 2007) § 53a-101 (a) (1) and (a) (2), assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and two counts of violation of probation, resulting in a sentence of sixty-two and one-half years of incarceration. This court affirmed the judgment. Id., 721–22.

In an amended petition for a writ of habeas corpus dated September 4, 2015, the petitioner asserted, inter alia, that his trial counsel, Attorney Dennis Harrigan, provided ineffective assistance on the basis of (1) an actual conflict of interest due to his prior representation of Brian Levin, a state's witness, in an unrelated criminal matter, (2) failing to object to the petitioner's exclusion from an in-chambers conference to discuss the possible conflict of interest, (3) failing to move to suppress a witness' identification of him from a photographic array, and (4) failing to object to the consolidation of his two criminal cases for trial. Following a trial, the habeas court denied the petition but granted the petition for certification to appeal. This appeal followed.

Our standard of review for the habeas court's findings of fact and conclusions of law on a claim of ineffective assistance of counsel is well established. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *David P.* v. *Commissioner of Correction*, 167 Conn. App. 455, 468, 143 A.3d 1158, cert. denied, 323 Conn. 921, 150 A.3d 1150 (2016).

"Under the sixth amendment to the United States constitution, a criminal defendant is guaranteed the right to the effective assistance of counsel." *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 29, A.3d (2018). "To determine whether a defendant is entitled to a new trial due to a breakdown in the adversarial process caused by counsel's inadequate representation, we apply the familiar two part test adopted by the court in *Strickland* [v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires [a] showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires [a] showing that counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . The sixth amendment, therefore, does not guarantee perfect representation, only a reasonably competent attorney. . . . Representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial." (Citation omitted; internal quotation marks omitted.) Id., 30–31. It also is well settled that a reviewing court can find against a petitioner on either *Strickland* prong, whichever is easier. *Small* v. *Commissioner of Correction*, 286 Conn. 707, 713, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

"With respect to the actual prejudice prong, [t]he habeas petitioner must show not merely that the errors at . . . trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. . . . Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the [petitioner] was denied fundamental fairness at trial." (Emphasis in original; internal quotation marks omitted.) *Wilcox* v. *Commissioner of Correction*, 162 Conn. App. 730, 741, 129 A.3d 796 (2016).

I

We first address the petitioner's claim that Harrigan rendered ineffective assistance on the basis of an actual conflict of interest. The gravamen of the petitioner's claim is that Harrigan previously represented Levin in an unrelated criminal matter prior to the petitioner's trial. According to the petitioner, this representation resulted in an actual conflict of interest, which, had the petitioner known, he would not have waived, but instead would have sought to avoid by requesting the appointment of different counsel. Due to this alleged conflict, the petitioner claims that (1) Harrigan failed to impeach Levin with his pending criminal charges during cross-examination and (2) because he was not advised that Harrigan would not impeach Levin with his pending criminal charges on cross-examination, the petitioner did not knowingly, intelligently, and voluntarily waive the conflict of interest despite having been canvassed by the court.[2]

"Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. Where . . . the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of

interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance. . . .

"The [United States Court of Appeals for the Second Circuit] has honed this test further. Once a [petitioner] has established that there is an actual conflict, he must show that a lapse of representation . . . resulted from the conflict. . . . To prove a lapse of representation, a [petitioner] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. . . .

"An actual conflict of interest is more than a theoretical conflict. The United States Supreme Court has cautioned that the possibility of conflict is insufficient to impugn a criminal conviction. . . . A conflict is merely a *potential* conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future. . . . To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough. . . . If a petitioner fails to meet that standard, for example, where only a potential conflict of interest has been established, prejudice will not be presumed, and the familiar *Strickland* prongs will apply." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Burgos-Torres* v. *Commissioner of Correction*, 142 Conn. App. 627, 634–35, 64 A.3d 1259, cert. denied, 309 Conn. 909, 68 A.3d 663 (2013); see also *Walker* v. *Commissioner of Correction*, 176 Conn. App. 843, 852, 171 A.3d 525 (2017); *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 584–85, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005).

Furthermore, as a general duty to former clients, rule 1.9 (c) of the Rules of Professional Conduct states in relevant part: "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or *when the information has become generally known*; or (2) reveal information relating to the repre-

sentation except as these Rules would permit or require with respect to a client." (Emphasis added.)

The following additional facts and procedural history are relevant to our consideration of this claim. On October 18, 2007, Harrigan filed an appearance in the petitioner's criminal case for the burglary and assault at 103 Waterville Street, and on February 28, 2008, was appointed as counsel in his criminal case for the burglary at 29 Waterville Street. Approximately nine months later, on November 26, 2008, Harrigan filed an appearance for Levin in three unrelated criminal cases.[3] Less than four months later, thereafter, on March 6, 2009, he filed a motion to withdraw as counsel in Levin's cases, which the court granted on March 20, 2009. Levin testified as an eyewitness in the petitioner's trial on November 17, 2009. In sum, Harrigan's representation of the petitioner and Levin overlapped for approximately four months.

At the petitioner's criminal trial on November 17, 2009, Levin, an eyewitness to the assault, testified that he saw a young Hispanic male, carrying a baseball bat, chasing an older black male, whom he later identified in a photographic array as the petitioner, as they ran past his driveway. Levin stated that as the Hispanic male got close to the petitioner, the petitioner hit the Hispanic male once with a tire iron causing him to fall to the ground. Levin testified that he did not see the Hispanic male hit the petitioner with the baseball bat or swing the bat.[4] *State* v. *Marshall*, supra, 132 Conn. App. 724–25. Our review of the record reveals that Levin's testimony at the petitioner's November 17, 2009 criminal trial is substantially similar to the statement that he gave to the police shortly after witnessing the assault on July 26, 2007. We note that his police statement was given prior to his arrest on his own criminal charges in May, 2008. See footnote 3 of this opinion.

At the habeas trial, in response to the respondent Commissioner of Correction's question as to whether Harrigan felt that there was a conflict at the time of the petitioner's trial due to his past representation of Levin, Harrigan testified: "No. . . . I think I represented Mr. Levin probably three months. The case that . . . I had was basically paired to his other cases that [another public defender] had. We were kind of tagging along. So there really wasn't a lot of things going on with the case while I represented him other than getting pretrials and [the other public defender] trying to work out his situation. When I realized that he was a witness in [the petitioner's] case, I made the motion to withdraw. So I really didn't have a lot of contact with Mr. Levin."

Nevertheless, the petitioner claims that Harrigan's conflict of interest adversely affected his representation of the petitioner because he failed to introduce evidence of Levin's pending criminal charges during cross-exami-

nation. The petitioner argues that "[b]y not impeaching Levin with his pending charges, trial counsel allowed a crippling blow to the claim of self-defense that could have been countered."[5]

It is important to note that the petitioner's claim of ineffective assistance is premised on his trial counsel's failure to impeach Levin with his pending criminal charges on cross-examination because of an actual conflict of interest. The petitioner is not claiming a violation of the confrontation clause under the sixth amendment to the United States constitution or a *Brady*[6] violation. Thus, the petitioner is required to demonstrate that Harrigan actively represented conflicting interests and that the actual conflict of interest adversely affected Harrigan's performance. *Burgos-Torres* v. *Commissioner of Correction*, supra, 142 Conn. App. 634.

Both the trial court and the habeas court concluded, and we agree, that the petitioner failed to demonstrate that Harrigan had actively represented conflicting interests and that a conflict of interest adversely affected Harrigan's performance. For example, the petitioner has not provided any evidence, at all, that Harrigan received confidential information during his representation of Levin, a former client, which would have affected the petitioner's defense or limited Harrigan's ability to effectively cross-examine Levin. We reiterate that a mere theoretical division of loyalties is not enough. See id., 635. In addition, even if Harrigan had confidential information, maintaining Levin's confidences did not adversely affect Harrigan's performance because the information necessary to cross-examine Levin, as the petitioner suggests, was otherwise available to Harrigan. Generally, pending criminal charges are a matter of public record, and thus Harrigan was not precluded from questioning Levin about his pending charges during cross-examination because that information had become generally known. See General Statutes § 1-215; Rules of Professional Conduct 1.9; see also *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 93 A.3d 1142 (2014). Furthermore, we reiterate that Levin's testimony at the petitioner's criminal trial was substantially similar to the statement that he gave to the police shortly after witnessing the assault on July 26, 2007, meaning that there was a sound tactical reason, apart from the alleged conflict, for Harrigan not to cross-examine Levin with the pending charges. Lastly, as this court previously stated in his direct appeal, the petitioner's own written statement to the police demonstrated that he did not act in self-defense. *State* v. *Marshall*, supra, 132 Conn. App. 729.

## II

The petitioner next claims that Harrigan provided ineffective assistance by failing to object to the court's exclusion of the petitioner from participating in an in-

chambers conference discussing Harrigan's prior representation of Levin.[7] According to the petitioner, the in-chambers conference "was more extensive than the on-the-record canvass," and therefore, his exclusion from the in-chambers conference violated "his right to be present at all critical stages of the proceedings against him."

Prior to Levin's testimony on November 17, 2009, the following exchange occurred on the record:

"[Attorney Harrigan]: Your Honor, we discussed in chambers with yourself and Judge Damiani of a situation that has arisen, although it wasn't aware to all parties prior to this date. But we thought it was prudent to at least make mention of it on the record.

"That being the fact that the next witness to testify is [Levin]. There was a period of time that I know he has pending cases and at one point I was appointed to represent [Levin] and I did have discussions with him regarding his pending cases.

"Although it was learned fairly soon after my beginning to represent him that he was indeed the same [Levin] as a witness in this case. When I became aware, I informed [Levin] and also informed [the petitioner] of the situation, and [Levin] was appointed a special public defender who has represented him from then until this period of time.

"I did discuss it again with [the petitioner] and indicated the court was going to ask him some questions regarding waiver of [a potential] conflict that may arise based on my brief representation of [Levin]. And [the petitioner] indicates he's willing to stipulate or waive any potential conflict that may arise because of that. I really don't see one in this case but—

"The Court: As you said in chambers, [Levin's] cases are unrelated to the current—

"[Attorney Harrigan]: [Levin's] cases are unrelated to this case and it's not my intention to get into anything regarding any knowledge that I have of this case is based on my representation of [the petitioner]."

Following this colloquy, the court canvassed the petitioner for a waiver on the conflict of interest.

A fundamental tenet of criminal jurisprudence is that a criminal defendant has a constitutional right to be present at all critical stages of his or her prosecution. *State* v. *Walker*, 147 Conn. App. 1, 13, 82 A.3d 630 (2013), aff'd, 319 Conn. 668, 126 A.3d 1087 (2015). "[A]n in camera inquiry regarding a potential conflict of interest *may* constitute a critical stage of a prosecution at which . . . a defendant has a constitutional right to be present. . . . Nevertheless, it does not follow that all in-chambers discussions constitute a critical stage of the prosecution. In *State* v. *Lopez*, [271 Conn. 724, 859 A.2d 898 (2004)], our Supreme Court stated that [i]n judging

whether a particular segment of a criminal proceeding constitutes a critical stage of a defendant's prosecution, courts have evaluated the extent to which a fair and just hearing would be thwarted by [the defendant's] absence or whether his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. . . . It further noted that a defendant may be afforded the right either to object or to waive an objection to his absence from a conference held in chambers if the existence of such a conference subsequently is placed on the record. . . . Applying the test set forth in *Lopez* to determine whether a particular in camera proceeding qualifies as a critical stage of the prosecution is a necessarily fact intensive inquiry. Thus, it is imperative that the record reveal the scope of discussion that transpired." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 14.

Importantly, "[w]hen we are left to speculate as to whether the [in camera] conversation[s] consisted of the [trial] court and counsel conducting an extensive discussion as to [the] potential conflict[s] of interest at one end of the spectrum or, at the opposite end, a brief comment to the court that there was a matter that needed to be placed on the record, or . . . dialogue that fell somewhere in between . . . we cannot determine the extent to which a fair and just hearing would have been thwarted by the defendant's absence or whether his presence has a reasonably substantial relation to the fullness of his opportunity to defend against the criminal charges." (Internal quotation marks omitted.) *State* v. *Walker*, 319 Conn. 668, 677, 126 A.3d 1087 (2015).

In the present case, Harrigan recalled during the habeas trial that an in-chambers conference with Judge Schuman, who oversaw the petitioner's criminal trial, occurred regarding the potential conflict of interest with Levin, but he was "not sure if there was a detailed conversation with him at all other than I represented [Levin]. [Levin] had pending cases. That was probably it." Harrigan also stated that he had a one-time meeting about his representation of Levin with Judge Damiani. On the basis of these statements and the insufficient record, we are unable to determine the scope of the discussion that transpired during the in-chambers conference; accordingly, such deficiencies preclude appellate review. See id., 677–78; see also *Lederle* v. *Spivey*, 151 Conn. App. 813, 818, 96 A.3d 1259 ("[a]s we are left to speculate as to the existence and nature of these alleged in-chambers discussions, we decline to review the defendant's claim"), cert. denied, 314 Conn. 932, 102 A.3d 84 (2014).

### III

The petitioner also claims that Harrigan provided ineffective assistance by failing to move to suppress

the identification of the petitioner from a photographic array by Lourdes Hernandez, a witness to the 29 Waterville Street burglary. Specifically, he claims that the photographic array shown to Hernandez was unreliable and unduly suggestive because he was the only person wearing a striped shirt in the array and Hernandez had previously told the police that the perpetrator was wearing a yellow striped shirt at the scene of the crime.

"To prevail on a motion to suppress a pretrial identification, a defendant must prevail on a two-pronged inquiry. [F]irst, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification. . . . The defendant bears the burden of proving both that the identification procedures were unnecessarily suggestive and that the resulting identification was unreliable." (Internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 170–71, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010).

The habeas court ruled as follows in its memorandum of decision: "Harrigan did not think that the motion to suppress would be granted, in large part because there were a total of six [photographic] identifications in both criminal cases. Suppressing one [photographic] identification would not impact the other five, especially given other considerations, such as . . . Hernandez . . . also recognizing the petitioner from having seen him several times on her street." The court concluded that "Harrigan had a reasonable basis to conclude that a motion to suppress one or more of the [photographic] identifications, in particular because of the striped shirt being overly suggestive, would not [have been] granted." We agree with the habeas court's determination. The petitioner has failed to demonstrate that his counsel's performance was deficient. Moreover, he also has failed to demonstrate how he was prejudiced, given the fact that the petitioner was positively identified by five other witnesses; see *State* v. *Marshall*, supra, 132 Conn. App. 731; accordingly, the petitioner is unable to satisfy either *Strickland* prong.

IV

Lastly, the petitioner claims that Harrigan provided ineffective assistance by failing to challenge the joinder for trial of his two criminal cases stemming from the burglaries at 29 Waterville Street and 103 Waterville Street. The petitioner hypothesizes that because his criminal charges stemming from the burglary at 103 Waterville Street included a violent crime, i.e., assault in the first degree, the consolidation of his trial on those

charges with the trial of all charges arising from the burglary at 29 Waterville Street, which did not involve any violent crime, caused him undue prejudice. The petitioner contends that "[h]ad trial counsel opposed consolidation of the charges against the petitioner, there is a reasonable likelihood that the matters would have been tried separately," and, as a result, "the outcome of the petitioner's criminal trials would have been more favorable to [him]."

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Santos* v. *Commissioner of Correction*, 151 Conn. App. 776, 782–83, 96 A.3d 616 (2014). Furthermore, "[a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken." (Internal quotation marks omitted.) *Lynn* v. *Bliden*, 443 F.3d 238, 247 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383, 167 L. Ed. 2d 168 (2007).

During the habeas trial, in response to a question as to why he had not opposed the consolidation, Harrigan testified that, "given the facts, I don't think it probably would necessarily have been successful to oppose a consolidation; but beyond that, I thought that the first case—the evidence in the first case was such that it really [did lend] itself to having both together. The clothing that [the petitioner] was wearing when he got arrested a few hours later was totally different than what was described by [Lourdes] Hernandez." He additionally stated that, although the petitioner's criminal acts at 103 Waterville Street were violent, it was also "part of the reason why we decided to go with a court trial rather than a jury [trial]." Harrigan further opined that "given the facts of what [the petitioner] was wearing at the time he was arrested just a few hours later . . . I thought there would be enough reasonable doubt created in that to basically clear him of the first [burglary at 29 Waterville Street]."

The habeas court concluded that "Harrigan's decision to not oppose the state's motion to consolidate was reasonable and founded on reasonable strategic grounds." We agree. The petitioner's argument is nothing beyond mere speculation and is insufficient "to overcome the strong presumption of correctness afforded to the strategic decision made by trial counsel." *Brown* v. *Commissioner of Correction*, 131 Conn. App. 497, 507, 27 A.3d 33, cert. denied, 303 Conn. 905, 31 A.3d

1181 (2011).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his amended petition, the petitioner also alleged a violation of due process. We note that "[a] habeas court need not . . . separately address due process claims subsumed by claims of ineffective assistance of counsel." *Evans* v. *Commissioner of Correction*, 37 Conn. App. 672, 693, 657 A.2d 1115, cert. denied, 234 Conn. 912, 660 A.2d 354 (1995).

[2] Because we conclude that there was no actual conflict of interest, we do not need to address the petitioner's waiver claim. See, e.g., *Hedge* v. *Commissioner of Correction*, 152 Conn. App. 44, 60, 97 A.3d 45 (2014) ("[i]t would be incongruous to vacate the petitioner's conviction due to the trial court's allegedly inadequate canvass and failure to inquire into a potential conflict of interest following our conclusion that there was no conflict of interest in this case"), cert. denied, 321 Conn. 921, 138 A.3d 282 (2016).

[3] Evidence in the record shows that although Levin's criminal acts occurred on or about August 1, 2001, March 30, 2007, and April 23, 2008, he was not arrested on these charges until sometime in May, 2008. On July 19, 2010, Levin pleaded guilty under the *Alford* doctrine; see *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); to two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and criminal violation of a restraining order in violation of General Statutes § 53a-223b, and was sentenced to seven years of incarceration, execution suspended, and three years of probation.

[4] In contrast, another eyewitness to the assault, Jamal Trammell, testified that the victim swung a baseball bat at the petitioner before the petitioner hit him. *State* v. *Marshall*, supra, 132 Conn. App. 725. The petitioner hypothesizes that had Levin's pending criminal matters been introduced during cross-examination, "it would have served to impeach his credibility," and "[a]s a result, there is a reasonable probability that the [s]tate would have been unable to prove, beyond a reasonable doubt, that the petitioner had not acted in self-defense when striking the victim." In other words, the petitioner argues that the trial court could have credited Trammell's testimony that the petitioner assaulted the victim in self-defense, rather than believing Levin's impeached testimony that the victim did not swing at the petitioner prior to the petitioner's assault with the tire iron.

[5] The respondent posits two arguments in response: (1) that the trial judge already knew of Levin's pending criminal charges, and (2) that Levin's pending criminal charges would not have been admissible because they did not affect his credibility. Both arguments are misplaced.

First, as a general principle, "[i]t is well established that consideration of extrinsic evidence is jury misconduct sufficient to violate the constitutional right to trial by an impartial jury." *State* v. *Kamel*, 115 Conn. App. 338, 344, 972 A.2d 780 (2009). In a bench trial, the court sits as a trier of fact; *Knock* v. *Knock*, 224 Conn. 776, 793, 621 A.2d 267 (1993); therefore, the court would not have considered its outside knowledge of the witness' pending criminal charges unless such evidence was admitted.

Second, we further note to clarify the misstatement by the respondent regarding whether Levin's pending criminal charges could have been introduced to impeach his credibility. "Although evidence of an arrest without conviction is inadmissible to attack the credibility of a witness, such evidence is admissible where it would reasonably tend to indicate motive, interest, bias or prejudice on the part of the witness." *State* v. *Cruz*, 212 Conn. 351, 359, 562 A.2d 1071 (1989). Accordingly, because "pending criminal charges are widely recognized for their particular relevance to a witness' *interest* in testifying . . . it is violative of the confrontation clause when a court completely refuses to allow any inquiry for the purpose of exposing such areas." (Citations omitted; emphasis in original.) *State* v. *Cosby*, 6 Conn. App. 164, 169–70, 504 A.2d 1071 (1986).

[6] *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[7] In his amended petition, the petitioner also alleges a violation of his due process rights as a result of his exclusion from the in-chambers conference. As explained in footnote 1 of this opinion, this allegation is subsumed into his ineffective assistance of counsel claim because "where the petitioner's claim of a violation of due process is so inextricably bound up in the issue of the effectiveness of his trial [or appellate] counsel . . . a separate claim of a violation of the right to due process is not required." (Internal quotation marks omitted.) *Evans* v. *Commissioner of Correction*, 37 Conn. App. 672, 693, 657 A.2d 1115, cert. denied, 234 Conn. 912, 660 A.2d 354 (1995).